# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **TREVOR LEE BUTTERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **vs.** | )   **Civil Action Number** |
| | )   **6:18-cv-00472-AKK** |
| **NANCY BERRYHILL,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Trevor Butters brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the ALJ's decision is not supported by substantial evidence and is due to be reversed and remanded.

## I.     Procedural History

Butters, who served in the Marine Corps and National Guard, worked previously as a military policeman, sales representative, route sales driver, and car rental manager. R. 191-198. He stopped working in 2014 due to his alleged disability. *Id.* Butters filed his application for disability benefits thereafter asserting a disability onset date beginning on April 1, 2016 due to post-traumatic stress

1

disorder ("PTSD"), back injury, depression, and sleep apnea. R. 66, 176. After the SSA denied his application, Butters requested a formal hearing before an ALJ. R. 78, 87, 103. Ultimately, the ALJ entered a decision against Butters. R. 15-25. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1-3. Having exhausted his administrative remedies, Butters filed this action pursuant to 42 U.S.C. § 405(g). Doc. 11.

## II. Standard of Review

Federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence,

the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

In reviewing findings of fact, credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

In contrast to factual findings, the court reviews the SSA's conclusions of law *de novo*, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the

ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.* And, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

## III.    Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore*, 405 F.3d at 1211. To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1)    whether the claimant is doing substantial gainful activity;
(2)    whether the claimant has a severe impairment;
(3)    whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4)    whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.     The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that Butters satisfied step one because Butters was not engaged in substantial gainful activity since his alleged onset date. R. 17. At step two, the ALJ found that Butters has "severe impairments" caused by a history of a traumatic brain injury ("TBI"), degenerative disc disease of the lumbar spine, obstructive sleep apnea, and PTSD. *Id.* (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ concluded that Butters does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpt. P, App. 1, § 12.15 for trauma- and stressor-related disorders. R. 18-19. Next, the ALJ determined Butters' residual functional capacity ("RFC") and found that Butters can "perform medium work" with

limitations on lifting fifty pounds, standing, and working near hazardous machinery and unprotected heights. R. 19-25. Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Butters could not return to his past relevant work. R. 25. The ALJ then proceeded to step five, where based on Butters' RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Butters is capable of performing "jobs that exist in significant numbers in the national economy," including work as an assembler, checker, or inspector. R. 25-26, 61-63. Therefore, the ALJ concluded that Butters was not disabled. R. 26.

## V. Analysis

Butters raises multiple contentions on appeal. Allegedly, the ALJ failed to (1) properly apply the step-five analysis as it relates to Butters' purported ability to perform any work in the national economy; (2) evaluate Butters' chronic headaches; (3) make an individualized evaluation of the Veterans Administration ("VA") disability rating; (4) assign weight to the medical opinion of Dr. Zahid Husain; and (5) properly weigh the opinions of treating physicians Dr. Roger Singleton and Dr. Sharon Waltz. Doc. 11 at 8-18. For the reasons discussed below, as to the issues related to the VA rating and the weight assigned to the medical opinions, the ALJ's decision is due to be reversed and remanded.

## A. Whether the ALJ Properly Evaluated Butters' Ability to Perform Other Work

After a claimant demonstrates an inability to perform her previous relevant work, *Mathews v. Eldridge*, 424 U.S. 319, 335–36 (1976), "the burden shifts to the Secretary to show the existence of other types of substantial gainful employment that the claimant can perform," *Allen v. Bowen*, 816 F.2d 600, 601 (11th Cir. 1987) (citing *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981)). "Ordinarily, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981). "[T]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture by the administrative law judge." *Id.* (internal citation and quotation omitted). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002). However, "the hypothetical need only include 'the claimant's impairments' and not each and every symptom of the claimant" that are "either not supported by [the claimant's] medical records or [are] alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1270 (11th Cir. 2007).

Butters argues that the ALJ's erred in relying on hypotheticals posed to the VE without addressing alleged inconsistencies in the VE's testimony. Doc. 11 at

13-15.    During the hearing, the ALJ first asked the VE whether a person who "need[s] work that . . . requires only *occasional* cooperation or interactions with coworkers, supervision, and general public" and "infrequent" changes that are introduced "*occasionally*" and "gradually" could find work in the national economy. R. 60-61 (emphasis added).  The VE responded that although a person would be unable to return to semi-skilled and/or skilled work, the first hypothetical person would be able to perform work "in the medium classification" involving "bench work type jobs" such as an assembler, checker, or inspector.  R. 61.  The ALJ subsequently asked the VE whether jobs exist for a claimant who "could only *frequently* respond appropriately to supervision" or a claimant whose ability to "respond appropriately to changes in the workplace was reduced to *frequently*."[1]  R. 62 (emphasis added).  Butters contends that based on the ALJ's line of questioning, the ALJ erroneously relied on conflicting testimony that someone who can occasionally respond to changes or interactions in the workplace is able to work whereas a person who can frequently do that is unable to work.  Doc. 11 at 9.

Although Butters is correct that the ALJ erred by misconstruing the term "frequently" as occurring less often than "occasionally," the error is harmless.  To

---

[1] Social Security Ruling ("SSR") 83-10 defines "occasionally" to mean "from very little up to one-third of the time," and "would generally total no more than about 2 hours of an 8–hour workday." SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983).  SSR 83-10 also notes that "frequently" is defined as "occurring from one-third to two-thirds of the time." *Id.*

begin, when the ALJ misused the word "frequently," the VE's answer reveals that the VE assumed the hypothetical was about a person who could only less than occasionally interact with others or adapt to changes. R. 62 (VE testifying that "I think that given the *converse of one-third* of the time unable to respond to changes would eliminate all competitive work"). Thus, by referencing the opposite of one-third (i.e. occasional), *see* SSR 83-10, the VE answered that an inability to respond to any change or interact with others "would eliminate all competitive work." R. 62. Moreover, in light of the ALJ's RFC finding that Butters "can perform work with occasional cooperation or interaction with co-workers, the general public, and supervisors," any error in a few hypotheticals posed to the VE is harmless[2] because the ALJ made her determination at step-five, as Butters concedes, based on medical evidence in the record. *See* doc. 11 at 13 (Butters notes that the "ALJ's first hypothetical question . . . approximates her RFC finding" of Butters). Therefore, because the ALJ cannot rely on questions that are "either not supported by [the claimant's] medical records or [are] alleviated by medication," and it is evident the

---

[2] *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981) (finding that a "remand for express findings would be a wasteful corrective exercise" without other findings to alter the ALJ's decision supported by the entire record); *Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (noting that ALJ's failure to include a limitation in "the hypothetical posed to the VE is harmless" because the functional requirements of the jobs identified by the VE did not appear to involve the excluded limitation).

ALJ relied on the medical record,[3] the ALJ's error in misusing "frequently" does not constitute reversible error.[4]

## B. Whether the ALJ Failed to Evaluate Butters' Chronic Headaches

Butters next contends that the ALJ failed to evaluate and consider Butters' diagnosis of chronic headaches and its effects, either singly or in combination with other impairments. Doc. 11 at 15-17. The record, which shows that the ALJ considered all of Butters' impairments (whether severe or not) and determined that Butters' physical impairments and mental impairments, "considered singly and in combination, do not meet or medically equal" the listing criteria, belies this contention. R. 19, 24. As the Circuit noted, an ALJ's finding that claimant did not have "an impairment or combination of impairments listed in, or medically equal to one [in the listings]" is sufficient to show that the ALJ considered the impairments in combination. *See Jones v. Dep't. of Health & Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991). Moreover, "[n]othing requires that the ALJ must identify, at step

---

[3] *See, e.g.*, R. 20-21, 326, 365, 475, 579 (Butters' self-report that he attends church and would like to make friends; testimony that he would like to start a cow farm with his wife; medical notes indicating that his mood appeared euthymic and affect was pleasant and that he was alert, oriented, and recent and remote memory were intact; statement that he hoped to find work after he settled in from moving; and global assessment functioning (GAF) score of 62 indicative of only mild symptoms.)

[4] *See, e.g., Neville v. Astrue,* No. 1:10CV500-SRW, 2011 WL 2893642, at *3 (M.D. Ala. July 19, 2011) ("[T]he VE's testimony that an individual limited as described can perform other jobs existing in significant numbers in the national economy provides substantial evidentiary support for the ALJ's conclusion that plaintiff's pain-related concentration deficiency does not render him disabled.")

two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.,* 385 Fed. Appx. 823, 825 (11th Cir. 2010) (citing *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984)). Also, Butters did not list "headaches" as a basis of his disability and claimed only that he took "medications" for backpain and headaches.[5]   R. 178.   Furthermore, contrary to Butters' contentions, the ALJ expressly stated that Butters' TBI constituted a severe impairment, R. 17, and Butters conceded that "his headaches may be related to his chemical exposure in the Gulf War" or "multiple blast exposures."[6] Doc. 11 at 16 (citing R. 280-281, 430-431).

Finally, the record does not support a finding that Butters' headaches constitute a severe impairment, i.e. one "significantly limits [Butters'] physical or mental ability to do basic work activities.'" *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).   Although the record shows several medical progress notes concerning complaints of headaches, no doctor opined that Butters' headaches alone are so severe that they prevent him from working in any job.  In fact, the medical entries indicate only that Butters complained of headaches

---

[5] Butters listed only "PTSD, back injury, depression, and sleep apnea" as the "physical or mental conditions . . . that limit [his] ability to work."  R. 176.

[6] Butters also testified in the hearing that the headaches resulted from injuries sustained during a vehicle explosion in Iraq in 2014.  R. 41 (ALJ: So, how does [the vehicle explosion in Iraq] affect you? Butters: I have migraines, headaches daily, more and more headaches.").

related to his TBI from deployment and that he received regular prescriptions of Naproxen in 2016 and 2017, with one adjustment in medications.[7]

Although the record shows Butters complained about headaches, "the mere existence of these impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). Ultimately, "[i]t is [Butters'] burden to prove the existence of a severe impairment, and [he] must do that by showing an impact on [his] ability to work." *Marra v. Colvin*, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987)). Butters failed to do so here. Therefore, the ALJ committed no reversible error by failing to explicitly list chronic headaches as a separate impairment and adding it instead as part of the Butters' TBI.

## C. Whether the ALJ Properly Considered the VA's Disability Rating

Butters next challenges the ALJ's failure to consider the VA's 2016 determination that he is "unable to secure or follow a substantially gainful

---

[7] *See* doc. 11 (citing R. 274 (TBI consult results notes indicating that "headaches are also complaint" for Butters lasting 3-4 hours five times a week); R.276 (notes indicating that headaches exacerbated likely by stress and Butters started on a trial on Naproxen 500mg); R. 284 (noting that "war-related general examination indicated Butters' reports of headaches); R. 327-379 (record notes that Butters was actively taking Naproxen 500mg for inflammation and pain for headaches); R. 351 (Butters' neuro examination indicated "no numbness, no tingling, or weakness"); and R. 405 (Dr. Joana Hannah adjusts Butters' medication with a new trial for his "very severe" headaches)).

occupation as a result of service-connected disabilities." R. 153; doc. 11 at 17-18. "[T]he findings of disability by another agency, although not binding on the Secretary, are entitled to great weight." [8] 20 C.F.R. §§ 404.1504 and 416.904. Indeed, "[i]t is not disputed that the VA's 'disability' determination relies on different criteria than the SSA's determination. But that does not mean that the ALJ can summarily ignore the VA's determination nor give it 'little weight.'" *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.,* 673 F. App'x 902, 904 (11th Cir. 2016). Relevant here, as to the VA's determination of Butters' disability, the ALJ only noted that

> [t]he undersigned is mindful that the claimant has been found disabled by the Veteran's administration and is currently receiving disability payments from that agency. However, the Social Security Administration makes determinations of disability according to Social Security laws, therefore, while the VA determination has been considered, a determination of disability by another agency is not binding on this proceeding.

R. 24 (citing R. 152-157). Such generalized dismissals of agency determinations are insufficient to demonstrate that the ALJ "seriously considered Plaintiff's VA

---

[8] "20 C.F.R. §§ 404.1504 and 416.904 were amended in January 2017 to state that for claims filed on or after March 27, 2017, the SSA would 'not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits.'" *Elkins v. Comm'r, Soc. Sec. Admin.,* No. 18-14020, 2019 WL 2172748, at *1 (11th Cir. May 20, 2019) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5864, 5874 (Jan. 18, 2017)). "Because [Butters'] claim was filed and decided in [April 2016], however, this amendment is not relevant to the claims that [Butters] has raised on appeal." *Id.*

disability rating." *Brown-Gaudet-Evans,* 673 F. App'x at 904 (holding that "ALJ erred by giving the VA's determination 'little weight'").[9]   Accordingly, remand is warranted here.  However, "on remand, the ALJ is not required to give the VA's disability determination controlling weight." *Brown-Gaudet-Evans*, 673 F. App'x at 904.  Rather, in making a determination of whether Butters is disabled, "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give *specific reasons* if the ALJ discounts that determination." *Id.* (emphasis added).

## D. Whether the ALJ Properly Evaluated VA Psychiatrist Dr. Husain's Medical Opinion

Butters also argues that the ALJ erred by failing to acknowledge and state what, if any, weight she gave to the report of Dr. Husain, a staff psychiatrist at the VA, who conducted clinical video consultations and reviewed Butters' medical records.  Doc. 11 at 18; R. 384-88.  Dr. Husain opined that Butters "is not able to work because of his flashbacks from the experiences while in combat and his distrust

---

[9] *See also Adams v. Comm'r of Soc. Sec.,* 542 F. App'x 854, 857 (11th Cir. 2013) (holding that the ALJ did not commit reversible error for failing to specify the weight given to the VA disability determination only because the ALJ "expressly considered and closely scrutinized" the determination); *Passapera v. Comm'r of Soc. Sec.*, 2019 WL 1649962, at *3 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643265 (M.D. Fla. Apr. 16, 2019) ("treatment of a disability rating in this manner had been rejected by this Court and other courts in the Eleventh Circuit"); *Dunham v. Colvin*, No. 2:15-cv-622-GMB, 2017 WL 253979, at * 3 (M.D. Ala. Jan. 19, 2017) (finding reversible error when the ALJ gave the claimant's 100% service-connected disability rating "little weight" on the sole basis that the VA uses different criteria than the SSA to determine disability).

of people in general," "gets easily aggravated" and "feels depressed because of not being able to work," and has a "lack of energy" and "difficulty with attention." R. 384. As Butters correctly notes, the ALJ made no reference or assigned any weight to the opinion of Dr. Husain. The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown,"[10] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440, and must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions, *Winschel*, 631 F.3d at 1179. The ALJ failed to do so here, and her failure to explain the reasons for discounting the opinions of Butters' treating physicians precludes the court from determining whether it is "possible that the ALJ considered and rejected [Dr. Husain's] medical opinions . . . without clearly articulated grounds for such a rejection." *Id.* Therefore, this matter is due to be remanded so that the ALJ may "explicitly consider and explain the weight accorded to the medical opinion evidence." *Winschel*, 631 F.3d at 1179.

---

[10] "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241).

### E. Whether the ALJ Properly Weighed Drs. Singleton and Waltz's Medical Opinions

Lastly, Butters challenges the ALJ's determination to give the medical opinions of Dr. Singleton[11] "no weight" and Dr. Waltz "greater" than little weight. Doc. 11 at 19-29; R. 24. Regardless of whether the ALJ properly discredited these medical opinions, "the ALJ still committed reversible error by failing to state with particularity the weight given to [Butters'] treating physicians, including Dr. [Husain]." *Fleming v. Comm'r, Soc. Sec. Admin.*, 550 F. App'x 738, 740–41 (11th Cir. 2013). The court "must remand the case to the ALJ to give proper weight to all of the medical opinions presented at the administrative hearing" and "decline[s] to address the [proper weight given to Drs. Singleton and Waltz's medical opinion] presented on appeal because of the impact the first issue could have on the others after a reassessment on remand." *Id.*

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination is not based on substantial evidence. Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to make a disability determination based on the medical record by properly considering Butters' VA disability

---

[11] Butters notes that Dr. Roger Plamondon married and changed his name to Dr. Roger Singleton. Thus, treatment notes from Drs. Roger Plamondon and Roger Singleton are from the same doctor. Doc. 11-1, n.1.

determination and the medical opinion of Drs. Husain, Singleton, and Waltz. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 30th day of July, 2019.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE